Christian,. J.
This is a suit for the specific execution ■of an alleged parol agreement for the sale of real estate, which is sought to be taken out of the operation of the statute of frauds upon the ground of part performance.
The statute of frauds was founded in wisdom and sound policy. Its primary object was to prevent the setting up of pretended agreements, and then supporting them by perjury. But besides these direct objects, there is a manifest policy in requiring contracts of so “important a nature as the sale and purchase of real estate, to be reduced to writing; since otherwise, from the imperfection of memory, and the honest mistakes of witnesses, it must often happen either that the specific contract is incapable of exact proof, or that it is unintentionally •varied from its original terms. The statute, therefore, ■requires in contracts of such a nature as are therein mentioned more satisfactory and convincing testimony than mere oral evidence affords. The wisdom of permitting any deviation from the terms of the statute has *374 been questioned by the most eminent chancellors of England and of this country. Courts of equity, however, in their efforts to do complete justice and prevent fraud, have in certain cases relaxed the operation of the Matute; and in cases where a parol agreement for the sale of land has been clearly and distinctly proved, and part' performance in pursuance of the agreement established, a court of equity will decree specific execution.
But the principles upon which courts of equity have-avoided the statute of frauds, upon the ground of part-performance of a parol agreement, are now as well settled as any of the acknowledged doctrines-of equity jurisprudence. From the numerous decisions on the subject the following principles may be extracted and briefly stated as follows: 1st. The parol agreement relied on must bé certain and definite in its terms. 2d. The acts-proved in part performance must refer to, result from, or be made in pursuance of the agreement proved. 3d. The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation. Where these three things concur,; a court of equity will decree specific execution. Where they do not, it will turn the party over to seek compensation in damages in a court of law. See Cooth v. Jackson, 6 Ves. R. 12 ; Phillips v. Thompson, 1 John. Ch. R. 131; Seth’s ex’or v. Wooldridge’s ex’or, 6 Rand. 605; Anthony v. Leftwich, 3 Rand. 238 ; 1 Lead. Cases in Equity (White & Tudor), 2d Am. Ed., top p. 557-574, and cases-there cited.
Applying these well settled principles of equity jurisprudence to the case before us, there are, I think, at least three sound objections to the interference of a court of equity in this case. 1st. The agreement, as stated in the bill, and as proved by the testimony (if, indeed, any agreement is proved), is too uncertain and indefinite in its terms. 2d. The acts relied upon as part *375 performance are not shown to he in pursuance of, or to result from, any agreement stated and proved ; and 3d. The acts of part performance all lie in compensation.
The agreement, as stated in the bill, if it had not been denied by the answer, and had been sustained by the proof, was not of that certain and definite character which is peculiarly necessary in a bill for specific performance.
The bill is filed by George W. Pucket against the appellant, Milton Wright, who is the sole heir of Harvey Wright, to whom, upon the death of the latter, his laud descended, in which the plaintiff’ seeks the aid of the court to compel the defendant to execute specifically a contract which, it is alleged, was entered into between the said Harvey Wright in his lifetime and the plaintiff, by conveying to him the title to the land purchased under said agreement. The bill alleges that the said Harvey Wright, the uncle by marriage of the plaintiff', was the owner of a tract of unimproved land, and that being “a man much advanced in years, without pecuniary means, and physically unable himself to bring the land into cultivation,” approached the plaintiff, who was a young man in full strength and vigor, with the proposition “that if he would come and help him improve his land, he should have a part of it at his (Wright’s) death, and should be well compensated out of his land for his labor.” The bill further states, that “it was not at that time fully agreed what fart of the land, complainant should have, only that he should be well compensated for his labor in a part of the land; but the said Harvey Wright was to retain the possession and control of all the land during his life.”
This statement is followed by the allegation that “complainant entered faithfully and diligently upon his part of the contract, and continued faithfully to labor upon the laud, clearing and improving it for about eight years; and did improve the land so that it i’endered to *376 said Wright during his life a fair support.” It is further-alleged that “the said Wright afterwards laid off and designated all that portion of the land lying on the east side of the creek as the part complainant was to have in fulfilment of his contract.” But he admits that this land was used in common by Wright and Pucket during Wright’s lifetime. He admits he “took no writing from Wright, having every confidence that he would carry out to the letter what he had agreed to do, and that Wright departed this life making no disposition in any way of his property, and without making any writing conveying the land to complainant.”
Taking the bill as true, and the agreement as stated by the appellee in his own way, there is such uncertainty and want of definiteness in the contract, that a court of equity on that ground alone, might well refuse to lend its aid for specific execution.
But all the material allegations in the bill are denied in the answer, and not sustained by the proof. The evidence is conflicting and contradictory. That which is most favorable to the appellee consists of certain vague expressions, loose and casual observations, used by Wright in conversations said to have taken place many years.before, to the effect that he intended to pay Bucket out of his land, or that it would all be Pucket’s some day, and expressions of a like character. Nor was there any proof that there was a delivery of possession of auy part of the land to Pucket. The land claimed, enclosed on the east side of the creek, was in the joint possession of Wright and Pucket, used by them in common, and according to Pucket’s statement in his bill setting out the agreement, Wright was “to retain possession and control of all the laud during his life;” and there was nothing in the evidence to show that the possession of Pucket was, at any time, adverse to or inconsistent with the possession of Wright.
There was clearly not such part performance as would *377 take the ease out of the operation of the statute of frauds.
Kor has there been in this case such part performance. as cannot be compensated in damages. There was nothing in the situation of the appellee to prevent his recovering, in a suit at law, full indemnity and compensation for the services he rendered to the appellant’s intestate; and that was his plain and adequate remedy.
The tendency of all the modern cases, both, in Englaud and in this country, is to prefer giving the party compensation in damages, instead of a specific performance. Wherever damages will answer the purpose of indemnity, this alternative will be preferred, as it will equally satisfy justice, and will be coincident with the provisions and in support of the authority of the statute.
I am, therefore, of opinion that no cause has been shown for specific execution, and that the decree of the Circuit court ought to be reversed and the plaintiff’s bill dismissed.
The other judges concurred in the opinion of Christian, J.
Decree reversed.