Christian, J.
This is an appeal from a decree of the Circuit court of Wythe county. The bill is filed for the specific performance of an alleged parol agreement between David Pierce, the grandfather of the appellant, and Christopher Catron, the grandfather of the appellees; and also for the purpose of enjoining and restraining the further prosecution of an action of ejectment, in which a judgment had been recovered in said court against Alexander Pierce, the father of the appellants, by the appellees in the suit
It is admitted that the land for which the appellants are here seeking to have a parol agreement executed, is the same land which was the subject of the action of ejectment.
*592 The record in the ejectment suit shows that at the Octobertermof said Circuit court in the year 1869, the following judgment was entered: “ This day came*as well the plaintiffs by their attorney, as the defendant by his attorney, aud the defendant relinquishes his former plea, and acknowledges the plaintiff’s action for the land in controversy as laid down and described in the plat and report of William B. Foster, surveyor, filed in this cause, and bounded as follows: (and then follows a minute description of the land by metes and bounds). Whereupon it is considered by the court, that the plaintiffs recover against the said defendant, the premises in controversy, bounded as aforesaid; and the Commonwealth’s writ of habere facias posessionem is awarded to the plaintiffs accordingly.
In March, 1870, Alexander Pierce, the defendant in the action 'of ejectment, filed his bill in the Circuit court of Wythe county, against the plaintiffs in the action of ejectment, in whose favor he had confessed judgment; in which bill he prays for an injunction from said Circuit court, to enjciii and restrain the said plaintiffs in the ejectment suit, from the further prosecution of said suit; upon the ground that he could not set up his defence, (which was purely equitable), in the action of ejectment, but could only obtain relief in a court of equity. The injunction was accordingly awarded. Before a final hearing, Alexander Pierce departed this life, and the suit was revived in the name of his heirs. At the February term of the said Circuit court, the cause came on for a final hearing, when that court dissolved the injunction and dismissed the bill. From this decree an appeal was allowed to this court.
It is not necessary, in my view of this case, to consider other questions much argued at the bar, whether certain documentary evidence and certain depositions read in *593 another cause, are admissible to be read in evidence in this cause. Even if we regard them both as properly in the case before us, and give to the testimony which was excluded by the court below, the utmost weight to which it is entitled, the appellants have, in my opinion, utterly failed to make out a case in which the powers and jurisdiction of a court of equity can be invoked.
The father of the appellants, by his confession of judgment in the action of ejectment, acknowledged the superior legal title of the appellees. He confesses thereby that the legal title to the land in controversy was not in him, or in those under whom he claims, hut was vested in the appellees. His heirs now come into a court of equity, and ask for the exercise of its extraordinary powers by way of injunction, to restrain the further action of the appellees under the judgment which they have recovered in their action of ejectment; and seek to set up in themselves a paramount equitable title, and one which they assert could not be relied upon in their defence in the action at law. The ground upon which they claim the interference of a court of equity, is, that sometime before the death of Christopher Catron, the ancestor of the appellees, who has been dead nearly three quarters of a century, there was a parol agreement between him and the grandfather of the appellants, one David Pierce, by which the land in controversy was sold by said Catron to said Pierce; and they assert that the whole of the purchase money was paid, and their ancestor, David Pierce, was put in possession of said land. They state in their bill, that the land contained 114 acres, and refer for boundaries for same to a survey made by one Robert Adams, in a suit brought by David Pierce against the widow and representatives of Christopher Catron, in the Chancery court at Staunton, in the year 1811. The prayer of their bill is, “ that the agreement made and en *594 tered into between Christopher Catron, dec’d, and David Pierce, dec’d, may be specifically performed and carried into execution by the heirs at law of the said Christopher Catron, dec’d; and that the said defendants (the appellees) “maybe compelled to convey the said land by a good and sufficient deed of conveyance,” to the appellants ; and that the defendants, (the appellees,) may be enjoined and restrained from any farther prosecution of the said action of ejectment,” &c. This is the statement of the parol agreement made by the plaintiffs in their bill, and of the relief which they seek. The answer denies all the material allegations of the bill on the points we are considering. It says, “ it is not true as alleged in the bill, that David Pierce ever purchased from Christopher Catron either the tract of 88 acres or the tract of 26 acres, making 114 acres claimed, of land in the bill mentioned. It is not true that Christopher Catron ever put him (David Pierce) in possession of any part of either of said tracts as a purchaser. It is not true that at the time of said Christopher’s death, or at any time before or since, said David Pierce was in any such possession as purchaser from said Christopher Catron. * * * The answer further avers that the land now in controversy was at that time mainly in a state of nature. The Iron Works on the adjoining lands purchased in 1800 by David Pierce from Robert ganders, were very near the dividing line between the two tracts, and more convenient to timber on Catron’s land than on Pierce’s own. Accordingly, by an arrangement in which each looked to his own convenience, Pierce to a cheap supply of timber for his Iron Works, and Catron to a speedy clearing of his land for crops, from a time soon after they became adjacent proprietors, and before any proposition of purchase had been mooted, or at least entertained, Pierce had been permitted by Catron to *595 take-wood from sundry portions of the land which he wished cleared, including certain portions from the 26 acre parcel and the 88 acre parcel, making up the' 114 acres in the bill mentioned, and had of such portions such occupancy as was incident to such permission, and no other.”
This is the case as made by the bill and answer. We have now to look to the proof of .the parol agreement between David Pierce and Christopher Catron, to ascertain its nature and terms. According to well settled principles, the contract, sought to be specifically executed, must be established by competent proofs, to be clear, definite and unequivocal in all its terms. If the terms are uncertain, ambiguous or not made out by satisfactory proofs, a specific performance will not (as indeed upon principle it should not) be decreed, 2 Story’s Eq. § 764. The reason is obvious enough; for a court of equity ought not to act upon conjectures; and one of the most important objects'of the statute of frauds was to prevent the introduction of loose and indeterminate proofs of what ought to be established by solemn written contracts. Let us look then to the proofs of this parol agreement upon which the appellants rely, as establishing their superior equity, which they insist must override the legal title which they acknowledge is in the appellees.
Eirst. Let us see what the contract (under which they claim) was, as stated by their grandfather David Pierce himself. Let it be premised that Christopher Catron died in the year 1802, leaving a widow and children, the-oldest of whom was nine years of age at the period of his death. In the year 1811, David Pierce filed his hill in the Chancery court at Staunton for the very same purpose for which these appellants filed the bill we are now considering, to wit: for the specific execution of the very contract under which these appellants now claim. *596 It is a fact to be noted, that while Christopher Catron died in 1802, and the alleged agreement was made some year or two before his death, David Pierce took no step towards asserting his claim under that contract until the year 1811; and that he suffered that suit to linger until the year 1882, (over 20 years) when it was dismissed for want of security for the costs.
But let us see what is his statement of his own agreement with Christopher Catron. These appellants say that the contract was to convey 114 acres, and that the whole of the purchase money was paid, and they gave the metes and bounds. What does David Pierce, under whom they claim, say as to the same contract under which they must stand or fall ? He says of [the same contract in 1811, (the appellants speak of the same contract in 1869,) that he “ made a contract with the said Christopher Catron for a quantity of land adjoining the said reserved part, beginning at a line tree, and to run across a hill, so as to include an angle of land—the line to run across said hill to another line of the tract which made the angle. This land, by the said contract was then estimated at fifty acres; but it was agreed that whatever it might be, your orator (David Pierce) should have it at one dollar per acre.” He avers that he paid only fifty dollars of the purchase money, and admits that there was no written agreement signed by the parties.
In this suit certain depositions were taken to prove the parol agreement. Two witnesses were examined to prove the contract. They say they “heard Christopher Catron declare that he had sold to David Pierce a quantity of land for one dollar per acre; that they asked Catron how much land he had sold; and he replied he did not know the exact quantity, but it was to begin about the blue hole, and run a square line across the hill to the other line, and that said Catron told' them he had received fifty *597 dollars towards the land. That if it was more than fifty acres upon a survey, Pierce would have to pay him the balance, and if it was less, Catron would have to pay back what he had, received too much.”
This is all the evidence that David Pierce could produce in the year 1811, as to his contract with Christopher Catron. This suit brought by David Pierce in the year 1811, for the specific execution of the contract upon which the appellants solely rely for their superior equity, was abandoned by him in the year 1832; he having suffered the suit to be dismissed for want of security for costs. The appellants now renew the same claim, abandoned by their grandfather more than forty years ago. And what do they prove ? They introduce one witness only, an old lady eighty-eight years old. She gives certain declarations not of Catron but of Pierce, made not in the presence of Catron, made more than fifty years before. Her testimony amounts literally to nothing. She says, “ I don’t know what Pierce was to give for the land, nor what he paid for it except the cowsnor does she pretend to give a description of the quantity or boundaries of the land.
How this is the whole proof as to the terms of the contract which the court is asked to specifically execute, except certain deeds in which the parties refer to certain lands claimed by David Pierce, the recitals of which are too indefinite (even if the appellees were bound by them, which is by no means clear), upon which to found a claim in a court of equity.
Here then is a case, in which the appellants come into a court of equity for specific performance of a parol agreement upon the ground of part performance. They assert that their ancestor purchased 114 acres of land, for which he paid the whole of the purchase money. The proof is, (if proof it can be called), that he purchased *598 an indefinite quantity of land estimated at fifty acres, for which he paid fifty dollars. They now ask that 114 acres of land may be conveyed to them, for which their ancestor, according to their own testimony, and aceord*nS *° s°lemn admission, paid only fifty dollars, and that too without even an offer upon their part to pay the balance of the purchase money shown by their own evidence to be still due and unpaid. And all this is asked in pursuance of an alleged parol agreement of the indefinite, uncertain and ambiguous.character of that which is proved in this case, and entered into so long ago that three quarters of a century have elapsed, and three generations have passed away.
The principles upon which courts of equity have avoided the statute of frauds, upon the ground of part performance of a parol agreement, are now as well settled as any of the acknowledged doctrines of equity jurisprudence. Prom the numerous decisions on the subject, this court has in a recent case, declared the following principles, which must be taken as the settled law of this State. 1st: The parol agreement relied on must be certain and definite in its terms. 2d: The acts proved in part performance must refer to, result from, or be made in .pursuance of the agreement proved. 3d: The agreement must have been so far executed that a refusal of full execution would operate as a fraud upon the party, and place him in a situation which does not lie in compensation. When these three things concur, a court of equity will decree specific execution. When they do not it will be refused. See Wright v. Puckett, 22 Gratt. 370, and authorities there cited.
I think it is clear that this case does not come within these well recognized principles of equity 'jurisdiction.
Much was said in the arguments of the able counsel for the appellants, as to the long and uninterrupted pos *599 session and open and notorious acts of ownership exercised for so long a period by David Pierce and his heirs. If such continued occupancy and notorious acts of ownership amounted to an adverse possession, which (as was contended) .conferi’ed title, they ought to have been relied upon in the action of ejectment. The confession of judgment in the action at law by the father of appellants, acknowledged that the legal title was in the appellees. His heirs cannot set up a title by adverse possession in a court of equity, which is in effect and not in terms attempted to be done in this bill. And their grandfather, David Pierce, with whom the alleged contract was made, having failed sixty years ago, to establish a case for specific performance, and having abandoned his claim, it is now too late for his heirs to set up the same claim after the lapse of so many years, and when there necessarily exists such great uncertainty as to the true character of the contract which is now sought to be specifically executed. I am of opin - ion that the Circuit court of Wythe did not err in dissolving the injunction and dismissing the bill; and that its decree must be affirmed.
Moncure, P., and Bouldin, J., concurred in the opinion of Christian, J.
Decree aeeirmed.