*MARY J. SWAN V. REASIN W. SHAHAN ET AL.

1. NOT VOID FOR WANT OF CONSIDERATION.

E, an unmarried woman, and the mother of the plaintiff, then an infant child, made a parol contract with W. (who had no children), with the knowledge and consent of his wife, in which he agreed to take the plaintiff and adopt her as his own child and heir, and treat her as their own daughter; and that at the death of W. and his wife, she should succeed to and become the owner of all the property of which he should die seized and which remained at the death of his wife. He took the plaintiff in pursuance of this agreement and changed her surname to that of their own, and entered the name and date of her birth as the daughter of W. and wife in the family record, and always thereafter, up to the time of the death of W. recognized her as their daughter and taught her to believe that they were her true parents, and she was married with that understanding and belief. W. died without making any provision for the fulfillment of the contract upon his part. After the full performance of the agreement on the part of the plaintiff, and her said mother, and the death of the wife of W. *Held*, 1. That the agreement is not void for the want of consideration.

2. PART PERFORMANCE.

That such part performance is sufficient to take the agreement out of the operation of the statute of frauds and the plaintiff is entitled to a decree for specific performance.

3. NOT WITHIN STATUTE OF FRAUDS.

Such agreement is *capable* of being performed within one year, and not within the statute of frauds.

4. ACTION FOR EQUITABLE RELIEF NOT BARRED.

That the action is for equitable relief, and is not barred by the six year clause of the statute of limitations. Nor is the plaintiff a creditor of the decedent within the meaning of section 6113, R. S., and the action is not barred in four years.

APPEAL from the Court of Common Pleas of Knox county.

The petition sets forth in substance, that in the year 1840, the plaintiff was about two years of age, and resided with her mother, Nancy J. Elliott, a single woman, who had the sole care and custody of her; that during said year, James E. Woodbridge and Lydia T. Woodbridge, his wife, requested the said Nancy J. Elliott, the mother of the plaintiff, to permit them to take the said plaintiff to their home and adopt her as their own child; and as an inducement to grant said request, they informed said Nancy J Elliott, that they had no children, and did not expect any ever to be born to them, and that they had abundant means to keep and provide for the plaintiff; and as a further inducement to grant said request they promised and agreed with the plaintiff's said mother, that if she would give up plaintiff to them, and forever afterward renounce all claim and right to the care and custody of her said child, they would adopt and keep said plaintiff as their own child and heir, and that she should be cared for and provided for by them the same as if she was their own daughter, and that the said James E. Woodbridge would make her his heir, and that she should succeed to the title and possession of his property at his death, with all the rights, claims and privileges thereto that she would were she his own child. And it was further agreed that the plaintiff's said mother should keep secret from her said child her true parentage and never make herself known to the plaintiff, as it was the desire and wish of said Woodbridge and wife, that plaintiff should grow up supposing them to be her true parents, and that she should bestow upon them all the love and affection she would were she their own daughter.

That relying upon said promises, the said plaintiff's mother did consent that said Woodbridge and wife should take the plaintiff and adopt her as their own child, and to have the care, custody and control of her during her minority that they would were she their own daughter. That in pursuance of said agreement, the said Woodbridge and wife did take the plaintiff to their home in Mount Vernon, Ohio, and immediately thereafter changed the plaintiff's name to that of Woodbridge, and wrote in the family record the name and date of her birth as follows: "Mary J. Woodbridge, born February 2d, A. D. 1838." And from that time until the death of said Woodbridge they called the plaintiff their daughter, and taught her to call them father and mother, and they always gave the plaintiff to understand and caused her to believe that she was their own child, and they gave the plaintiff's husband, E.

*This case was reversed by the Supreme Court. See opinion, 48 O. S., 25.

G. Swan, to understand and caused him to believe that she was their own daughter, and the said Woodbridge gave his consent to plaintiff's husband, as her father, to marry her, and on the 17th day of May, 1870, said Woodbridge performed the ceremony of giving plaintiff's hand away in marriage to the said Swan; that said Swan, the plaintiff's husband, did not learn that his said wife was not the daughter of said Woodbridge and wife until after the death of the said James E. Woodbridge. That after her marriage the said plaintiff and her husband frequently visited at the house of Woodbridge and wife—visiting them as her father and mother, and they received her as their daughter.

Plaintiff further avers that the said mother on several occasions visited at the home of said Woodbridge and wife, while she was there, to see her; but that pursuant to said agreement she did not disclose that she was plaintiff's mother.

That no children were ever born to said Woodbridge and wife. That on the 28th day of August, 1874, the said James E. Woodbridge departed this life intestate, seized of real and personal property amounting in value to $40,000, without providing by will or otherwise for the carrying out and performance of his said agreement with the plaintiff's said mother. That immediately after his death the said Lydia T. Woodbridge informed the plaintiff for the first time that she was not the daughter of said Woodbridge and wife; that up to that time plaintiff had no knowledge of her true parentage, but supposed and believed that she was the daughter of the said James E. Woodbridge and wife. That the said Lydia T. Woodbridge well knowing the agreement between her husband and plaintiff's mother, and for the purpose of deceiving the plaintiff and preventing her from asserting her right and claim against said estate, under and by virtue of said agreement and the performance on their part by the plaintiff and her said mother, falsely and fraudulently represented to the plaintiff that she was taken while an infant by them to raise only, and that she had no rights to, or claim against said estate; and that the said Lydia T. Woodbridge would not then, or at any time thereafter, disclose to the plaintiff who her mother was, and concealed from her her true parentage. That Lydia T. Woodbridge then took letters of administration upon said estate and converted said estate to her own use. That on the 25th day of March, 1875, said Lydia T. Woodbridge died, leaving a last will and testament in which the said defendant, Shahan, was made executor. That said Shahan was duly appointed and qualified as such executor, and took possession of the whole of the real and personal estate of said James E. Woodbridge, amounting then in value to the sum of $39,000, claiming the same to be the property of the said Lydia T. Woodbridge, and has since been in the control thereof. Plaintiff avers that she did not learn of said agreement, nor her true origin and parentage until April 15, 1882.

Plaintiff therefore prays that she be adjudged and decreed the owner and entitled to the possession of said estate, real and personal, and that the defendant, Shahan, be required to account and turn over to her all moneys, credits and property of every kind coming from or belonging to the estate of James E. Woodbridge, and for other proper relief.

To this petition Reasin W. Shahan, executor, filed an answer, the first defense of which is in the nature of a general denial of the averments of the petition.

*Second*—That the alleged contract was for the transfer of real estate, was not in writing and is within the statute of frauds.

*Third*—That the alleged contract was not intended to be, nor was it capable of being performed within one year; was not in writing and is within the statute.

*Fourth*—That the cause of action did not accrue within six years next preceding the commencement of this action.

*Fifth*—That James E. Woodbridge departed this life on the 28th of August, 1874. That on the 1st day of September following, his wife, Lydia T. Woodbridge, was appointed and qualified as administratrix of his estate. On the 22nd day of March, 1875, said Lydia T. died. On the 2nd day of April following, Charles Baintree was appointed administrator *de bonis non;* that he has fully settled said estate and that more than five years have elapsed from the issuing of letters of administration upon said estate before the commencement of this suit. That the same is barred by the statute of limitation.

*Sixth*—That the property and estate of which said James E. Woodbridge died seized, did not come to him by descent, devise or deed of gift, and that by his death it descended to his wife as sole heir; that she left a last will and testament, by which the defendant Shahan was made executor; that he was appointed and qualified as such, and that more than five years have elapsed since his said appointment and publication of the notice thereof, before the commencement of this suit, and that the same is barred by the statute of limitations.

*Seventh*—That Lydia T. Woodbridge bequeathed to the said plaintiff the use of six thousand dollars during her life, and that she accepted the same with full knowledge of all her rights, and has not paid or offered to pay back any portion of the sums received by her under said bequest.

*Eighth*—Avers the death and administration of the estate of James E. Woodbridge as set forth in fifth defense, and the death, last will and testament of Lydia T. Wodbridge, and the appointment of defendant, Shahan, as executor; that the said plaintiff did not present the claim on which this suit is founded to the said Lydia T. Woodbridge as administratrix, or to the said Shahan as executor, for allowance; nor did either of them disallow the same.

To the second, third, fourth, fifth, sixth and eighth defenses, the plaintiff demurred, and she filed her reply to the seventh defense, to which defendant demurred.

ALBAUGH, J.

The most important question presented for our consideration is raised by the demurrer to the second defense, and if we are right in the conclusion we have reached as to that, the other questions are not of difficult solution. The able arguments of counsel on both sides, have not been strictly confined to the questions presented by the several demurrers; but it has also been claimed and elaborately argued, that the contract upon which this action is based, is void for the want of mutuality, and for inadequacy of consideration. The validity of the contract in these respects must necessarily be determined in the discussion of the question made by the demurrer to the second defense, because if it is void for the want of either of these elements, there would be nothing upon which the relief invoked could be predicated. In considering the sufficiency of this defense, we must assume that all the allegations of the petition are true.

For the purpose, then, of understanding the nature and extent of the contract claimed, and of determining the rights of the parties under it, we must look to all its terms, the position and surroundings of the parties at the time it was made, and the subject-matter therein contained, as well as the legal requirements that are essential to its validity. The motive that actuated the mother of the plaintiff to enter into this agreement, is easily understood; she was charged with the duty of the care, custody and control of the plaintiff, then an infant, as its mother, and had, we assume, the natural parental love and affection for her child; and while she was transferring that care and responsibility to Woodbridge and wife, and thereby freeing herself from that duty, she was, at the same time, transferring to them the affections of her child, and renouncing and relinquishing that tender love and care that mothers have for their offspring, as well as securing the advantages to it that persons in affluent circumstances would guarantee. On the other hand, it appears from the petition, that the Woodbridges were childless, and that they never expected children to be [born to them; their conduct toward the plaintiff immediately after receiving her and during the life time of Woodbridge, is sufficient to warrant the conclusion that their object and desire was to procure for themselves that happiness in their declining years, that the affections of a child taken in its infancy, in ignorance of its true parentage, could be trained to bestow upon them as its supposed parents, and upon whom they could bestow their favors and affections.

We are unable to believe as is claimed by counsel for the defendant, that it was an act of charity, or intended to be such on the part of Woodbridge and wife; all their conduct repels such an idea. It was stipulated that the plaintiff should not be permitted to know her true ancestry; that she should be taught to believe that she was their child, and with that view it was agreed that the mother, upon her visits to the plaintiff, should refrain from the natural exhibition of the feeling of a mother for her child, and from making herself known to it. Its name was changed to "Woodbridge," and an entry made in the family record of the name and date of birth, and in this she was called the daughter, and so recorded, of Woodbridge and wife, so that upon examination of this agreement, we must conclude that the advantages derived from the transaction to the parties were reciprocal. The plaintiff's mother made a beneficial arrangement for her child, and the affections of Woodbridge and wife were satisfied by the adoption of a daughter.

In the case of Van Dyne v. Vreeland, 11 N. J. Eq., 381, the contract upon which relief was sought was almost identical with the contract claimed in this case. The court say in that case: "There is no consideration of public policy which should forbid the court countenancing such an agreement; considerating the situation of the parties and their circumstances in life, it was beneficial to all parties, and cannot be considered as injudicious or unreasonable."

In Smith v. Hogden, 62 Mo., 114, the court say: "There are things which money cannot buy; a thousand nameless and delicate services and attentions incapable of being the subject of explicit contract, which money, with all its peculiar potency, is powerless to purchase. The law provides no standard whereby the value of such services can be estimated, and equity can only make an approximation in that direction by decreeing specific execution of the contract. The reasoning and authorities would seem a sufficient answer as to any lack of mutuality in the contract under consideration; but after a contract has been fully performed and acquiesced in, as in the present instance; after a contracting party has received all the anticipated benefits arising from a faithful performance, it must be apparent that it would be altogether inequitable to permit such party at this late period, when the law can afford no adequate redress, to raise objections on the score of mutuality."

But it is claimed that the contract is for the transfer of real estate, and not in writing, and, therefore, within the statute of frauds. This would be a complete defense to the action, unless there has been such part performance on the part of the plaintiff and her mother, as would take the case out of the statute. The facts, as disclosed by the petition, show that the mother left nothing undone that she agreed to do, and that the agreement upon her part was fully and completely performed according to its terms. The plaintiff was placed in the care, custody and control of Woodbridge and wife, and remained there during all the time until her marriage; and it is not claimed that she in any way failed on her part to so conduct herself as to be wholly consistent with the duties and obligations of a daughter, and that her marriage was even such as to invoke the sanction and approbation of her adopted parents. She was brought up from her childhood in ignorance of her true mother, and with the full understanding and belief that she was their daughter, and there is no act of miscon-

duct complained of, either in the failure to render services, or in disobedience; but on the contrary, it appears to us that in all things there has been complete realization of all the anticipated benefits, derived from the contract to Woodbridge and wife.

Upon what principle, then, can they be excused from the performance of the contract upon their part? The theory upon which equity proceeds in administering its specific remedy in such cases is, that one party having promised another to treat the agreement as binding, and to do positive acts based upon such presumption, it would be a fraud on him to repudiate his undertaking and set up the statute as an obstacle in the way of its completion. The doctrine is most frequently applied to contracts for the sale of land which have been partly performed by the purchaser, but is not confined to these; it is extended to those contracts concerning things personal or things in action, which the statute of frauds requires to be in writing, but which, when verbal, are in their nature, capable of part-performance. "Payment of the purchase money alone in contracts for the sale of real estate, made in whatever manner, will not ordinarily take the agreement out of the operation of the statute. It does not so change the situation of the parties as to render a legal remedy impracticable or inadequate, to recover back the amount paid by an action at law; but where it is impossible to restore the party to his original position by any legal remedy, when the fundamental conditions of the equity jurisdiction in case of part-performance are fulfilled, that such payment is sufficient to take the verbal contract out of the statute of frauds." Pomeroy on Specific Performance, 40, 161.

And in Waterman on Specific Performance, 46, the author in speaking of the rule that payment of purchase money upon contracts for land is not sufficient to take a parole agreement out of the statute, says: "But the rule that the payment of the consideration will not in general be deemed such part-performance as to relieve a parol contract from the operation of the statute of frauds, does not apply where the consideration is labor and services of such a peculiar character, that it is impossible to estimate their value by any pecuniary standard, and where the vendor did not intend to so estimate them."

In Rhodes v. Rhodes, 3 Sand. Ch., 279. The plaintiff entered into a parol agreement with his brother, in which it was agreed that the plaintiff should provide for, and attend him during his life, and at his brother's death he was to have all his property, both real and personal; the contract was performed on the part of the plaintiff, and the brother died without having made any provisions for the execution of his part of the agreement. It was held that in general the payment of the consideration is not such part-performance of a parol agreement for the purchase of lands as will relieve it from the operation of the statute of frauds. But where the consideration consists of services to be rendered, which are of such a peculiar character that it is impossible to estimate their value to the vendee by a pecuniary standard, and the vendor did not intend to measure them by such a standard, the performance of the contract will entitle the vendee to a specific performance of the contract, notwithstanding the contract was by parol.

Also, in Lester v. Lester, 28 Gratt., 737, it was held, that where a father entered into a parol contract with one of his sons, whereby he agreed to give him all of his property in consideration that the son would support his father and mother during their lifetime, that upon performance on the part of the son, he was entitled to relief, and that he would recover the property from a brother to whom it had been conveyed.

In Vandine v. Vreeland, 11 N. J. Eq., 371, before cited, the father of an infant child made an agreement with an uncle of the infant, at the uncle's request, to the effect that the uncle should take the infant and adopt him as his own child, and that he would treat him as his own son, and that the property he should have, should be given to the child, so that it should belong to him at the death of the uncle and his wife. The uncle took the child and had him baptised, and the child assumed his surname and lived with him twenty-five years. It was held that the child might maintain his bill upon the agreement after such performance; that under such an agreement, from which benefits are to accrue to the child upon his performance, the party for whose benefit the agreement is to be performed, and especially if any valuable portion of the consideration has been rendered by him, has the legal right to enforce it, and it is of no consequence that the promise to fulfill is not made directly to the person who is entitled to the remuneration. It is enough if it was made by someone who had authority to make it and on his behalf.

It is further contended, however, that the plaintiff is not entitled to relief by way of specific performance, unless it appears that the failure on the part of Woodbridge and wife to comply with the terms of the agreement would operate as a fraud upon her. This is without doubt the well settled rule, and unless her condition has been so changed, or unless she can have no adequate legal remedy, she would not be entitled to relief. That the plaintiff cannot have a remedy at law, is apparent from the very nature and character of the services performed by her. It would be impossible to make them a ground of recovery at law. It was not intended that she should perform services alone in the legal acceptation of that term, but she was to occupy the position and perform the duties of a daughter, to receive and accept the love and affections of her adopted parents, and reciprocate the same. By virtue of the terms of the contract, she had become their child as much so as though she had been really born to them. She owed to them the loyalty and obedience of a child to its natural parents, and they in turn were charged with her custody, education and control, and were entitled to her services. She performed the duties and obligations of a daughter. She

received and accepted the attentions of the man whom she afterward married as the daughter of Woodbridge and wife, and was married as such, and they fraudulently suppressed from her and from her husband her true parentage, and it was not until after the death of Woodbridge and the performance of the contract on her p irt in all its details, that the widow disclosed the fact to her and her husband that she was not their child.

If the value of the services could be ascertained with reasonable accuracy in an action at law, and adequately compensated by the recovery of damages, neither the services themselves or the payment of them will avail as a part-performance of the verbal agreement; but if the services are of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, or if it is evident that the parties did not intend to measure them by any such standard, then the plaintiff, after the performance of such services, could not be compensated. Under such circumstances the renditon of the services or procuring them to be rendered, is a part-performance of the verbal agreement. And where a verbal agreement has been made, and one party has knowingly aided or permitted the other to go on and do acts in part-performance in full reliance upon such agreement, and which services are of such a nature that an adequate compensation for the loss by an action at law cannot be had, then it would be a fraud in the first party to interpose the statute of frauds as a bar to the completion of the contract, and thus secure to himself the benefits of acts already done in part performance, while the other party would not only lose all advantages from the bargain, but would be left without a remedy for its failure. To prevent the success of such fraud, equity interposes, and compels an entire completion of the contract by decreeing its specific performance. Pomeroy, Spec. Per., 355, Rhodes v. Rhodes, 3 Sand. Ch., 279; Davidson v. Davidson, 140, 13, N. J. Eq., 220; Brown on Frauds, 213; Vandine v. Vreeland, 12 N. J. Eq., 371; Smith v. Hogden, 62 Mo., 120; Hill v. Game, 1 Beaven, 541; Waterman on Spec. Per., 368.

The case of Wallace v. Rappale, 104 Ill., 229, cited by counsel for the defendant, is not in conflict with the cases heretofore referred to. In that case the contract was made by the father of the illegitimate child and the mother, in which he agreed to take the child into his own family and support it, and at his death give it a share of his property and estate. The case was decided upon the ground, first, that the proof was not sufficient to support the agreement; and second, that the consideration was illegal, so far as the unlawful cohabitation entered into it. An agreement in consideration of future illicit cohabitation is void—and past cohabitation does not form an adequate consideration. It is further said in that case, that the putative father of an illegitimate child and his participant in such conjugal offense, cannot by arrangement between themselves thus deprive the injured wife and her lawful children of their rights of inheritance and bestow upon them, in whole or in part, the spurious offspring of their adulterous intercourse, and that a court of chancery will not lend its aid to carry out such a purpose." But it will be seen upon examination of this case, that some of the cases to which we have heretofore referred as supporting the conclusion we have arrived at, were also considered with approval in that case, and the doctrine recognized as reasonable and equitable, but not applicable to the case then under consideration.

Neither do we think the case of Howard v. Brower, 37 O. S., 402, or the case of Crabill v. Marsh, 38 O. S., 331, support the defendant's claim. Both of these cases were actions for money only, to recover the value of services performed in pursuance of a contract for land. In the latter case the court say, "We are not called upon in this case to determine under what circumstances equity will or will not decree specific performance of a parol agreement for the devise or conveyance of land; such is not the character of the case before us. The ground upon which courts of equity interfere in such cases is that of fraud." Without further reference to authorities cited by defendant's counsel, we are of opinion that the demurrer to this defense should be sustained.

2. It is averred in the third defense that the alleged contract was not intended to be, nor was it capable of being performed in one year, and therefore is within the statute of frauds. The time of performance depended upon the death of Woodbridge and his wife; it was agreed, that upon the death of both, all the estate and property at that time belonging to Woodbridge should go the plaintiff. It cannot be said that such contract is not capable of being performed in one year; it is hardly necessary to observe that they might have died at any time within the year, so that the contract might have been fully performed within that time, and which would have been in accordance with the stipulation of the parties.

If the executory promise be capable of entire performance within one year, it is not within this clause of the statute. The decision of this question does not seem to depend entirely upon the understanding or intention of the parties. They may have contemplated as probable a much longer continuance of the contract, and it may in itself be liable to such continuance, and it may be so protracted that it is not in fact performed within a year; but if when made it was in reality capable of full performance within the year without the intervention of extraordinary circumstances, then it is to be considered as not within the statute. " And where the time for the performance of the contract is made to depend upon some contingency which may or may not happen within one year, it is not within the statute." 3 Parson's Con., 35.

" To bring a case within the statute of frauds, it must have been expressly stipulated by the parties, or it must upon a reasonable construction of their contract appear to have been understood by them, that the contract was not to be performed within a year." Herrin v. Buttes, 20 Me., 119.

"The statute applies to agreements which, fairly and reasonably interpreted, do not admit of a valid execution within one year. If an agreement *may* be performed entirely within the year, consistently with the understanding and rights of the parties, it is not within the statute." Brown on Frauds, 273.

We, therefore, conclude that the contract, being such that it was *capable* of full performance within the year, or that it *might* have been performed within the year, was not within the statute, and that the demurrer to this defense should be sustained.

3. As to the question made by the demurrers to the fourth, fifth, sixth and eighth defenses which interpose the statute of limitations, it is enough to say that from the very nature of the claim made in this case, neither could be available. The claim is for equitable relief, and would properly come within section 4985 R. S. And furthermore, it appears that the plaintiff at the time the cause of action accrued was, and still is, a married woman, and therefore within the saving clause of the statute.

4. The seventh defense sets forth in substance, that Lydia T. Woodbridge bequeathed to the plaintiff the use of a certain sum of money during her life, and that the plaintiff by accepting the payment of interest thereon has elected to accept such bequest, and is therefore estopped from asserting the claim made in this action. If the facts stated in the petition are true (and we must assume they are for the purposes of this demurrer) then Lydia T. Woodbridge was not the owner of the property or the fund bequeathed, and could not convey any title or interest therein. The plaintiff's claim is, that *she* is the owner of the whole estate and property from which this bequest was made, and that the part received by her was not taken as the property of the testatrix, but that it was absolutely her own. Besides, the reply to this defense denies some of the material allegations thereof. It is therefore manifest that the demurrer to this reply should have been overruled.

Judgment accordingly.

Follett, J., dissented.

Cooper & Moore, and M. R. Dickey, and Critchfield & Graham, for plaintiff.

H. H. Greer and Dirlam & Leyman, for defendant.