----------o----------

## Dent G. Tutt, Appellant, *vs.* Thomas W. Cloney, *et al.*, Respondents.

1. *Practice, civil—Evidence—Jury.*—In civil actions at law, questions of conflicting evidence are solely for the jury.
2. *Partnership—Speculations outside of regular business—Assent of members—Dissolution—Settlement—Effect as to retired member—Statute of limitations.*— Although a firm embarks in a joint speculation with other parties, and outside of its regular business, a member specially authorizing the same, is bound for the partnership losses resulting therefrom, and in settlement of the firm business, his co-partners may adjust its share in the loss ; and its settlement will bind him, although he may, at that time, have withdrawn from the firm. In such case the statute of limitations will not begin to run in his favor, in respect to his liability, until the date of the adjustment, and suit brought against him within five years thereafter will not be barred.

*Appeal from St. Louis Circuit Court.*

*Slayback & Haeussler*, for Appellant, cited Smith vs. Sterritt, 24 Mo., 260; Williams vs. Whitlock, 14 Mo., 552; McMurray vs. Taylor, 30 Mo., 263; Mudd vs. Bast, 34 Mo., 468; Sto. Part., §§ 328, 335, 341; Bryant vs. Hawkins, 47 Mo., 410; Powell vs. Charles, Adm'r, 34 Mo., 485; Boatman's Sav. Inst. vs. Mead, Adm'r, 52 Mo., 543; Milliken vs. Loring, 37 Me., 410; Colly Part., §§ 118, 546; Harny vs. Cricket. 5 Maul. & Selw., 336, 344; Fox vs. Hanburg, Cowp., 445; Pars. Part., 388, 390, 395, 396; 4 DeGex. M. & G., 542; Temple vs. Seaver, 11 Cush., 314; Mayson vs. Beazley, 27 Miss.. 106; Morse vs. Bellows, 7 N. H.. 568; Gow. Part., 253; Johnson vs. Kellogg, 3 Cal., 343; Wood vs. Bradick, 1 Taunt., 104; 5 T. R., 601; 7 Taunt., 157; 4 Ves., 36; 31 Ill., 62; 16 Ill., 341; Deering vs. Flanders, 49 N. H., 228; Gordon vs. Freeman, 11 Ill., 14; Kenney vs. Altvater, 77 Pa. St., 34; Am. Law. Reg., vol. 14, p. 758; Hickman vs. Kunkle, 27 Mo., 404; 3 Kent Com., § 43; Daly vs. Bates, 11 Johns., 544; Mann vs. Locke, 11 N. H., 246; Cody vs. Kyle, 47 Mo., 346; Richardson vs. Moies, 31 Mo., 430; McKay vs. Underwood, 47 Mo., 185.

*G. S. Van Waggoner, with Blodgett & Dickson*, for Respondents, cited Gow. Part., 398; Pars. Part., 172, 198; Freeman vs. Bloomfield, 43 Mo., 391; 2 Durn. & E., 483; Russell vs. Grimes, 46 Mo., 413; Berryhill vs. McKee, 1 Humph., 31; Rootes vs. Wellford, 4 Mumf., 215; Murray vs. Bogert, 14 Johns., 318; Halsted vs. Schmelzel, 17 Johns., 80; Westerlo vs. Everston, 1 Wend., 532; Atwater vs. Fowler. 1 Hall [N. Y.] 180; Chadsey vs. Harrison, 11 Ill., 156; Davenport vs. Gear, 2 Scam., 495; Goldsborough vs. McWilliams, 2 Cranch C. C., 401; Haldeman vs. Haldeman, Kemps, 559; Pate vs. Williams, 5 Cr. C. C., 154; Barry vs. Barry, 3 Cr. C. C., 120; Barns vs. Nottingham, 60 Ill., 531; Lamalere vs. Caze, 1 Wash., C. C., 435.

WAGNER, Judge, delivered the opinion of the court.

This was an action brought by the plaintiff, as assignee of Tutt & Baker, to recover an alleged balance due from the

firm of Cloney, Crawford & Co., which firm was composed of the parties last named and Thomas L. Price. Pending the action Price died, and his executrix and executor were made parties. At the trial the case was dismissed as to Cloney and Crawford, and it was then prosecuted solely against Price's representatives. The plaintiff had a judgment in the court at special term, but the judgment was reversed at general term, and the plaintiff appealed to this court.

The contention between the parties, and the liability of Price, spring entirely out of a transaction respecting the purchase of a large quantity of flour on which a loss was sustained. The firm of Cloney, Crawford & Co. were carrying on a trade in general merchandise, and also engaged in the forwarding and commission business. Crawford in the winter of 1862–3, assuming to act for his firm, entered into an engagement with Tutt & Baker and another party to purchase about four thousand barrels of flour, for shipment to the eastern market. The parties were to share the gains in equal proportions, and to submit to corresponding losses, if any. In the fall of 1863 Price retired from the firm, but it was still carried on by the remaining parties in the original style. After the flour was purchased and shipped it greatly decreased in value, and was held for a long time by the parties in the hope of obtaining higher prices, but this expectation being delusive, it was finally sold at considerable loss, which Tutt & Baker, who forwarded it, paid, and the amount now in controversy is the share of the loss for which the firm of Cloney, Crawford & Co. was liable. The settlement and adjustment of the amount was made by Crawford in 1865, after the withdrawal of Price from the firm.

It appeared in evidence that the transaction in flour was a matter outside of the scope and legitimate business of Cloney Crawford & Co., and that Crawford was the active man engaged in it, but there was evidence tending to show that Price was consulted about the enterprise and gave it his approval, and furnished part of the money. There was also evidence of a contrary character, but with the weight or credibility of tes-

timony we have nothing to do. If the declarations of law given by the court trying the cause were correct, then the judgment rendered on the verdict cannot be interfered with.

The following instruction was given for the plaintiff, to-wit: "If the jury believe from the evidence, that the firm of Cloney, Crawford & Co., while composed of Thomas W. Cloney, Thomas S. Crawford and Thomas L. Price, did, prior to the dissolution thereof, become indebted to the firm of Tutt & Baker on account of loss incurred in a speculation in flour, and that the account stood open and unadjusted until on or about Nov. 9th, 1865; and if the jury further believe from the evidence, that on or about that day the amount of such account was ascertained by and between Crawford, on the part of Cloney, Crawford & Co., and John F. Baker, on the part of Tutt & Baker, and that the amount so ascertained was agreed upon by said parties as the amount due to close said account, and that afterwards Baker, for a valuable consideration, transferred all his interest in said claim to plaintiff, and that the same remains due and unpaid, then the jury will find for the plaintiff the amount so found due, with six per cent. interest per annum, from the beginning of this action."

The court then of its own motion, gave this instruction: "If the jury believe from the evidence that the transaction out of which the alleged indebtedness of defendant to plaintiff accrued, to-wit, a speculation in flour, was not of the usual and ordinary business for the transaction of which the firm of Cloney, Crawford & Co. was formed, and in which it was at the time engaged, and that the only member of said firm who engaged in the speculation was Crawford, then the jury will find for the defendant, unless they believe that said Crawford had special authority from his partner, Thomas L. Price, to engage therein in behalf of said firm."

The established rule on the law of partnership is, that a dissolution puts an end to the joint powers of the partners, but that for the purpose of collecting the debts and settling the affairs of the firm, the partnership still exists. (Mudd vs. Bast, 34 Mo., 465.)

Judge Story says, that it is now the admitted doctrine of the common law, that although the dissolution of the partnership disables any of the partners from contracting new debts, or buying, or selling or pledging goods, on account of the firm, in the course of the former trade thereof, yet, nevertheless, it leaves every partner in possession of the full power to pay and collect all debts due to the partnership, to apply the funds and effects to the discharge of their own debts, and to adjust and settle the unliquidated debts of the partnership. (Sto. Part., § 328.)

Were it otherwise, and if a total extinction of all the rights and powers of the partners to deal with the partnership property and effects followed upon a dissolution of the partnership, it would amount to a suspension of the authority to apply the funds to the payment and discharge of the existing partnership debts, or to collect the debts due the partnership, or to adjust unsettled accounts, or to close up outstanding adventures. Most certainly, then, if the firm of Cloney, Crawford & Co. were engaged in the speculation in flour, the dissolution of the concern by the withdrawal of Price, did not affect the authority of Crawford to afterwards adjust and settle the account. Hence, the court did not err in giving the plaintiff's instruction.

The next question is, if the adventure in the flour transaction, out of which the loss accrued, was not within the scope of the partnership business of Cloney, Crawford & Co., whether Price gave a special authority to Crawford, so that the action of the latter bound him. Now, where one partner makes purchases of goods, not connected with the known business of the firm, in the name of the firm, such purchases will not bind the partnership; for the business of a partnership is not to be materially varied, except by consent of the other parties. The business of a partnership must be a matter for the determination of all the parties, and it must remain in force until changed by them. (Sto. Part., § 112; Pars. Part., p. 197.) This seems to have been the idea of the court, very clearly expressed in its instruction. It declares that if the

Lancaster, Adm'r, v. Washington Life Ins. Co. of N. Y.

transaction in flour was out of the usual and ordinary business for which the firm of Cloney, Crawford & Co. was formed, and in which it was engaged, and no other member than Crawford was concerned therein, then the plaintiff could not recover, unless Crawford was specially authorized by Price to enter into the affair for the firm: If Price gave a special authorization, that changed the character of the firm as to him, and made him a party to the transaction, entitling him to a share of the profits if any were realized, and making him liable proportionately for losses. The jury found that he did give this authority, and there was evidence to support the verdict, and the court had no right to interfere with it.

The point raised that the action is barred by the statute of limitations, is not well taken. The statute did not commence to run till the settlement or adjustment was made, and the suit was commenced within five years from that time.

Wherefore the judgment at general term should be reversed and that at special term affirmed. Judges Napton and Sherwood concur; Judges Vories and Hough absent.

---o---

