KELLY, *Appellant*, v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY.

1. **Practice**: NON-SUIT. The court should not take the case from the jury if there is any evidence, however slight, tending to sustain the allegations of the petition.

2. **Railroad**: NEGLIGENCE. Persons to whom the management of a railroad is intrusted are bound to exercise the strictest vigilance in carrying passengers to their destinations, and setting them down safely; and the company is responsible for want of care and foresight on their part in doing it, but not for any damages to which passengers may expose themselves by their own recklessness or carelessness. If a passenger be negligently carried beyond his stopping place, he can recover for the inconvenience, loss of time and expense of traveling back, but if he jumps or leaves the train under circumstances which prudence would forbid, he does it at his own risk and assumes the consequences of his own act.

*Appeal from Livingston Circuit Court.*—HON. S. A. RICHARDSON, Judge.

REVERSED.

*Waters & Winslow* and *Dixon & Henry* for appellant.

*Jas. Carr* for respondent.

NORTON, J.—This suit was instituted by plaintiff in the circuit court of Livingston county, for the recovery of $5,000 damages under section 2, chapter 147 of the general statutes. It is substantially alleged in the petition that Thomas Kelly, who was the husband of plaintiff, took passage on defendant's road at the town of Breckenridge, to be carried as a passenger to the town of Mooresville in Livingston county, a station on defendant's road; that defendant negligently and unskillfully failed to stop its train at the station at said town of Mooresville, but only slackened its speed, so that it moved about half as fast as an ordinary man generally walks; that said Thomas Kelly, as said train reached the place, made ready to alight, and on

learning that said train would not come to a full stop, but would soon go past said place and, on being told by defendant's agent to alight, that said Kelly with due and ordinary care and before it was discovered that the speed of said train was increased, and whilst it was yet moving slowly, did attempt to alight from said train at the place for stopping, and without fault on his part, but through the negligence of defendant was thrown from the train to the ground, under the same and killed by the cars of defendant. The answer of defendant denied all the allegations of the petition, and alleged that whatever injuries had been received by said Kelly were the result of his own carelessness, recklessness and negligence. At the close of the evidence of both plaintiff and defendant, the court instructed the jury that under the pleadings and evidence, the plaintiff could not recover; whereupon plaintiff took a non-suit, which the court refusing to set aside on a proper motion for that purpose made, defendant brings the case here by appeal.

The chief ground of error relied upon for a reversal of the judgment is the action of the court in withdrawing the case from the jury and thereby, as it is claimed, invading their province. The proper determination of this question necessitates a review of the evidence. It tended to show that Kelly, the husband of plaintiff, in September, 1871, purchased a ticket at Breckenridge, a station on defendant's road, and about nine o'clock at night entered an eastern bound train as a passenger to be carried to Mooresville, it being the first station east of Breckenridge; that when the train approached within three or four hundred yards of the said station, at which defendant was to get off, the engineer whistled down brakes; that the speed of the train was slackened and it passed the depot without stopping, going about as a man ordinarily walks; that the dead body of Kelly was found that night, about ten o'clock, under a western bound train of defendant, by which train, according to the evidence of witnesses, Glenn and Kelly, it had

been dragged from the west end of the platform from two to four hundred feet. Kelly testified that he saw that night, some of the remains on the ties within sixty or seventy feet of the depot; that upon an examination next morning he found that the remains came closer to the depot than he had seen them the night before. The platform extended ninety feet west of the depot. Glenn, another witness, testified that there were blood and pieces of clothing sticking to the ties from the west end of the platform to where the body was found, under the cars of the west bound train.

The evidence on the part of defendant tended to show that Kelly, when he got on the train at Breckenridge, was intoxicated and that, as the train was approaching the depot at Mooresville, he got up saying he would get off, and went out on the platform; that witness followed him out but saw nothing of him. The conductor testified that the train stopped at Mooresville about ten seconds, that there was one passenger on the train with ticket to that place, that he did not know him or see him alight; that he saw some one on the platform, saw the brakeman there, asked him if the man had got off, to which he replied: "all right, man is off here." Bloom, the brakeman, swears that the train made a short stop at Mooresville station, that he first saw the man going up the rise of the platform, and that, in response to an inquiry of the conductor if the man was off, he answered: "man off, all right;" states that he testified on a former trial that the man pitched on his hands and had not got up when he answered all right. Several witnesses testified that the body of Kelly, when struck by the western bound train, was lying on the track west of the platform and was dragged by this train from 150 to 300 feet. There was also evidence tending to show that Kelly was seen in a saloon in Mooresville after the eastern bound train, on which he was a passenger had passed the station, and also that Kelly and some other persons were heard quarreling on the railroad track 200

or 300 feet west of the depot after the said east bound train had passed.

Rebutting evidence was offered as to Kelly's being intoxicated, and also as to the fact of his having been in a saloon after the train on which he was a passenger had passed.

Whether Kelly came to his death by stepping off the train before it reached Mooresville station, or whether it was

1. PRACTICE: nonsuit.

occasioned by his being thrown under the cars in attempting to alight from the cars, while moving slowly, by direction of defendant's officers, or whether he was intoxicated and had lain down on the track and was run over by the western bound train, or whether he had been killed and thrown upon the track to be run over by defendant's train, is not shown. There was evidence applying to each one of these theories and it was the province of the jury to apply it. If Kelly's death was occasioned by the first, third or fourth of the above named causes, the defendant is not liable. If occasioned by the second cause, by negligence of defendant and without negligence on Kelly's part, the defendant is liable. As there was some evidence, although slight, tending to show that Kelly was killed by the eastern bound train on which he was a passenger, at the station in Mooresville, the question should not have been withdrawn from the jury, but submitted under appropriate instructions that if they believed he was so killed, they should inquire whether his own negligence contributed to his death.

In the case of *Doss v. M., K. & T. R. R. Co.*, 59 Mo. 27, it was held that whether the attempt of plaintiff to step from the cars while the train was in motion, was under all the circumstances of the case, such negligence as would relieve defendant of all liability for accident was a question of fact for the jury. For a person to jump from a car propelled by steam while in rapid motion, it is mere recklessness, and the leap must be made at his peril; but to step from a car not beyond the platform when its motion is

slight or almost imperceptible may or may not be negligence, and of this the jury are to decide from all the attending circumstances. The following cases are to the same effect: *Wyatt v. Citizens R. R. Co.,*55 Mo. 485; *Karle v. K. C., St. J. & C. B. R. R. Co.,* 55 Mo. 476; *Lloyd v. H. & St. J. R. R. Co.,* 53 Mo. 509; 56 Mo. 338. "These are risks which the most prudent men take, and plaintiff will not be barred of a recovery if he adopted that course which the most prudent men would take under the circumstances." *Smith, et al. v. Union R. R. Co.,* 61 Mo. 588; *Meyer v. Pacific R. R. Co.,* 40 Mo. 151.

Whether Kelly left the train by the direction of those having it in charge, which is alleged in the petition to be the fact, was a question for the jury, if there was any evidence tending to show it. What occurred between the conductor, who did not get off the train, and the brakeman, who did get off, tended to show this. As to whether Kelly was intoxicated at the time he left the cars, or left them while the train was in motion or at rest, or whether he got off safely, or was killed by the eastern bound train, or stepped off the cars before reaching the platform, the evidence was conflicting. All these questions were disputed, and should have been left to the jury, and the court in withdrawing them from their consideration invaded their province.

The line which marks the respective duties and functions of the court and jury is certain and well defined. It may be said that it is the duty of the judge to decide whether there is any evidence and the legal effect of it, and that it is the province of the jury to determine the sufficiency of it. In a case where there is no evidence to sustain a material allegation there is nothing for the jury to consider and the court may so declare. But when the facts are disputed, or the credibility of witnesses is drawn in question, or a material fact is left in doubt, or there are inferences to be drawn from facts proven, the case, under proper instructions, should be submitted to the jury. It

is for the jury, and not the court, to pass on the weight of evidence where there is any evidence. *Cook v. Hannibal & St. Joseph R. R. Co.*, 63 Mo. 398; 56 Mo. 590; 62 Mo. 116. While it may be said in this case that the evidence tending to establish some of the facts necessary to a recovery is very slight, yet as there is some evidence, the plaintiff had a right to have it passed on by the jury, and for the error committed in taking the case from them, the judgment will be reversed. 56 Mo. 590; 62 Mo. 116; 63 Mo. 397; 59 Mo. 484.

It may not be inappropriate to remark, as this case will have to be retried, that persons to whom the management of a railroad is intrusted are bound to exercise the strictest vigilance in carrying passengers to their respective destinations, and in setting them down safely, and are responsible for want of care and foresight in doing it, and are amenable for the direct and immediate consequences of errors committed by them. While this is so, they are not insurers against dangers to which a passenger may expose himself by his own recklessness or carelessness. If a passenger be negligently carried beyond his stopping place, and where he had a right to be let off, he can recover for the inconvenience, loss of time and expense of traveling back. But when he jumps or leaves the train under circumstances which prudence would forbid, he does it at his own risk, and assumes the consequences of his own act. Judgment reversed and cause remanded, in which Judges SHERWOOD and NAPTON concur; Judges HOUGH and HENRY dissenting.

*2. RAILROAD: negligence.*