Scovill v. Glasner.

---

## Scovill v. Glasner, *Appellant.*

1. **Amendments, tests of.** Two of the tests by which to determine whether a second petition is an amendment or the substitution of a new cause of action are: (1) That the same evidence will support both petitions; (2) That the same measure of damages will apply to both. If both of these fail the new pleading is not an amendment.

     Thus, where the first petition was in trover for certain goods; and the second charged that defendant had maliciously sued out a writ of attachment and caused the goods to be seized and sold at a sacrifice; *Held,* that the second stated a new and distinct cause of action, and was not an amendment.

2. ———: WAIVER. If the defendant pleads to the second petition, and tries the case on the issues thus joined, he thereby waives his right to raise the question of departure.

3. **Agent's Declarations, etc., as Evidence against Principal.** The acts and declarations of an agent are binding on his principal only when made at the time of the occurrence to which they relate, and while engaged in the performance of his office as such. They are then admitted as verbal acts and part of the *res gestae.*

4. **Admissions.** Conversations had between parties to the record after suit begun, are receivable in evidence as admissions.

5. **Malicious Attachment**: EVIDENCE. In an action for maliciously attaching and causing the sacrifice of plaintiff's goods; *Held,* that evidence that defendant endeavored to find out plaintiff's where-

29—79

Scovill v. Glasner.

abouts with a view of informing him of the attachment so as to prevent a sacrifice of the goods, was not competent.

6. ——: PROBABLE CAUSE is a mixed question of law and fact. When the facts are admitted the court should declare their legal effect, but when they are disputed the question is for the determination of the jury under proper instructions.

7. **Instructions.** It is not safe in a series of instructions to trust largely to the continuity in reasoning and the logical analysis of "the panel of twelve." They are liable to be misled by the assertion of apparently distinct propositions in separate instructions, which might to the professional mind be cognate and harmonious. The relation of one instruction to another ought to be so near that their connection and meaning would be obvious.

8. **Agent's Uncommunicated Knowledge:** TORT. Uncommunicated knowledge of an agent cannot be imputed to his principal for the purpose of fastening upon the latter a liability in tort, unless it appear that by the exercise of that diligence which a prudent and careful person ordinarily exercises under like circumstances, the principal might have obtained the information by timely inquiry of the agent.

9. **Domicil.** A mere residence of a temporary nature with no present purpose of an established abode, is not sufficient to constitute a person a resident of this State; but if one leaves his home in another state and brings his household goods into this State, and takes lodging here with an intent then formed of making his home in this State, without a present intention of removing therefrom, this would constitute him a resident from the time he moved into the State.

10. **Malicious Attachment:** ADVICE OF COUNSEL will not protect an attaching creditor from suit for malicious attachment if the creditor discloses to the counsel only the facts relating to the creation and existence of his claim; he should also disclose all he knows touching the grounds alleged for attachment.

11. ——. Neither will it avail the creditor to show that the suit was brought in good faith to recover what he believed he was entitled to under the law; he must also show that he believed in the existence of the facts alleged in his affidavit as grounds of attachment.

*Appeal from Jackson Special Law and Equity Court.*—HON. R. E. COWAN, Judge.

REVERSED.

*Wash Adams* and *H. Stubenrauch* for appellant.

*Dunlap & Freeman* for respondent.

PHILIPS, C.—Respondent, plaintiff below, sued the appellant in an action of trover, for the wrongful taking and conversion of certain household goods, wearing apparel, etc., the property of plaintiff. At the return term, and before answer filed, the plaintiff filed an amended petition, changing the action into one for maliciously suing out a writ of attachment, under which the goods were seized, and, as alleged, sold at a ruinous sacrifice. The amended petition set out the proceedings in the attachment suit, the grounds for which, alleged in the affidavit made by the defendant in this action, were, that the defendant was not a resident in this State, that the cause of action therein accrued out of the State, and that the defendant had absconded and secretly moved his property and effects into this State, and had fraudulently concealed and removed and disposed of his property, etc. Service was obtained therein by publication of notice; there was no appearance by the defendant in that suit; judgment was rendered therein, and the goods sold. The defendant moved to strike out the amended petition for the reason that the same changed the original cause of action, and in fact substituted a new cause. This motion was overruled, and defendant excepted. The defendant, however, filed answer to the amended petition, and went to trial thereon before a jury.

The plaintiff's evidence tended to show that he was an employe on a railroad train running into and out of the City of Kansas, Missouri; that prior to the 20th day of August, 1876, he and wife lived in Wyandotte, Kansas; that he then broke up housekeeping there and moved to Kansas City; that his wife went east to visit her friends. Part of his household effects he stored with a merchant in Kansas City, to be kept for him until he again resumed housekeeping in Kansas City, which he expected to do on his wife's return in a short time; that he took rooms at the

State Line House, which is in Missouri, with the balance of his effects; that he came to Kansas City to make it his home; that he occupied the room aforesaid, but took his meals at no particular place; that defendant's store was in West Kansas City, where he contracted the debt of $37, which was the basis of the attachment suit; that when he moved from Wyandotte, he did so openly, in daylight, passing, with the teams moving him, by the said store, and that all the officials and employes about the railroad offices and yards at the depot in Kansas City knew him, and knew where he was. The goods attached were those stored with the merchant aforesaid. He did not learn of the attachment until after the proceedings.

The defendant's evidence tended to show that he learned of the plaintiff's movement, but was unable to ascertain, after diligent inquiry, his whereabouts, but ascertained the storage of the goods in Kansas City; that the debt was past due, and the plaintiff had given no notice of his intended movement; that he took counsel of a reputable lawyer, and on his advice instituted the attachment, in good faith, and without any malice, etc.

Questions touching the competency of certain evidence arose in the progress of the trial, which will be stated in the opinion, as also respecting instructions given and refused. The jury returned a verdict for the plaintiff. From the judgment rendered thereon the defendant has appealed to this court.

I. The first question presented by this record is the right of plaintiff to file the amended petition. It certainly carries the right of amendment to the extremest verge, to uphold the amendment in this case. It cannot, as plaintiff's counsel contends, be maintained as a rule, that because the original petition was an action *ex delicto*, any other cause of action in tort may be substituted by amended petition. If it can, an action for assault and battery might be substituted for trespass in forcibly taking plaintiff's horse. An action for slander

1. AMENDMENTS, TESTS OF.

might be substituted for a *crim. con.* action. Nor is it to be maintained that because two actions might be joined in separate counts in the same petition, therefore, the one may be substituted for the other, by way of amendment. One count might be for trespass to the freehold, another for assault and battery. The discussion of this question in *Lumpkin v. Collier*, 69 Mo. 170, shows that the right of amendment does not necessarily obtain because the two cases stated belong to the same general classifications known to the common law and the code. One of the tests there applied is, that the evidence which would support the one would not the other. "A defendant served with process on one cause of action, suffering a default might be confronted with a judgment on a cause of action totally different from that which he was summoned to answer." The least that could be exacted in the exercise of the right of amendment is, that the amended petition should embrace the original cause sued on, with a like rule in respect of the measure of damages.

The original action in this case was merely for trover. On the trial of that action the plaintiff would have made out a *prima facie* case by showing title to the property, and that defendant, without his consent, wrongfully took and carried the same away. He need not have introduced a word about the attachment. This action the defendant might have defeated by showing that he had seized the same under the writ of attachment, obtained judgment thereon and sold. Although that judgment may have been irregularly obtained, and the proofs insufficient to justify its rendition, or absolutely false, it was not assailable in a collateral proceeding. It would have been a complete defense to the action of trover. Whereas, the amended petition set up the proceedings in an attachment suit, and sought to avoid the legal effect of the judgment therein, not by assailing it as void, but by averring that the suit was without probable grounds, and was malicious in its inception. True, the two petitions applied to the same prop-

erty, but they were essentially different in character. The proof that would have sustained the first would have wholly failed in the second. The measure of damages in the two cases was essentially different. In the first the measure of damages is the value of the property taken with interest from the date of the caption to the trial. In the latter, in addition to the damages mentioned the plaintiff might be entitled to recover exemplary damages far exceeding the value of the property taken. And in this case the court instructed the jury that they could give the plaintiff smart money.

In *Newton v. Allis*, 12 Wis. 378, an action to recover damages for flowing the plaintiff's land, he was not permitted to amend so as to charge the defendant, under the statute, for appropriating the land to his own use. It was a substitution, and so is this. While the courts in observing the spirit of the code, should be liberal in allowing amendments, yet it should be in furtherance of justice, and not beget laxity in pleading, by encouraging attorneys, without consideration of what they want and how to sue for it, to state anything as a case, on the reliance that afterwards when they find out what they want they may substitute a new cause of action and call it an amended petition.

But is the defendant in a situation to avail himself of this error? Instead of standing by his motion to 2. ——: waiver. strike out this amended petition, he saw fit to take issue on the merits of the new cause of action. The trial court thus acquired jurisdiction over the person, as it already had over the subject matter. It is the well established rule in respect of demurrers, that where, after demurrer overruled, the defendant files answer, the demurrer is deemed to be waived. *Pickering v. Miss. Valley Nat. Tel. Co.*, 47 Mo. 457. It is true that one of the principal reasons for this is that " a demurrer admitting the facts and an answer denying them are totally inconsistent with each other and cannot stand together." But, *arguendo,*

the same judge says the party should have abandoned the case there, " and thus avoided the wholly fruitless expense of a trial of the issues of fact. Having taken his chances upon those issues, it is now too late to go back and revive the demurrer." In *Fuggle v. Hobbs*, 42 Mo. 541, where the defendant complained of the striking out of an amended answer, Wagner, J., said : "If the appellant intended to avail himself of the errors committed by the court in this respect, he should have let judgment go at the time and stood on the exceptions.. By pleading over and going to trial on another issue, he voluntarily abandoned whatever grounds he might have had for a review of the action of the court. The judgment appealed from is the judgment rendered upon the issue tendered by the last pleading, etc."

The examination I have made of cases, where like questions have been before the appellate courts, and the party complaining has secured reversal, shows that it is where he has stood on his motion. I am of opinion that the better rule to establish touching the practice in this respect, would be to regard the error as waived where the party goes to trial on the merits of the amended pleading. He ought not to make the court a place of chance, and appeal only when he has failed on another accepted issue.

II. It is assigned for error that the trial court permitted witnesses to testify to statements and admissions made by Dan Glasner after the attachment suit was instituted. The evidence shows that Dan was the brother of the defendant, and had charge of the store as defendant's agent. His agency extended to the sale of goods and collecting debts of the concern. But the affidavit for the attachment suit was made by defendant, and the whole proceedings therein were conducted by him. The statements made by the agent were not a part of the *res gestae*. They were not made while he was selling the goods sued for, nor while he was trying to make collections therefor. The acts and de-

3. AGENT'S DECLARATIONS, ETC., AS EVIDENCE AGAINST PRINCIPAL.

clarations of an agent are binding on his principal only when made at the time of the occurrence to which they relate, and while engaged in the performance of his office as such. They are then admitted as verbal acts and part of the *res gestae.* I Greenleaf Ev., (14 Ed.) § 113, 114; *Aldridge v. Midland Blast Furnace Co.,* 78 Mo. 559; *McDermott v. Railroad Co.,* 73 Mo. 516; *Adams v. Railroad Co.,* 74 Mo. 553; *O'Bryan v. Kinney,* 74 Mo. 125; *Hamilton v. Berry,* 74 Mo. 179: The evidence in question was clearly inadmissible. The declarations were not part of the *res gestae.* They were not made in the line of the agent's duties.

III.   Defendant assigns for error conversations had by plaintiff with defendant after the attachment suit was be-
4. ADMISSIONS.      gun. The objection is not tenable. A. H. Glasner was a party to the record. As such, his statements were competent against him as admissions, for whatever they were worth in the judgment of the jury. I Greenleaf Ev., (14 Ed.) § 171.

IV.   The defendant complains that the court did not permit him to testify to efforts he made to find out where
5. MALICIOUS AT-  the plaintiff (Scovill) was, with a view
TACHMENT: evi-
dence.          of informing him of the attachment, so as to prevent a sacrifice of the goods on sale. This was properly excluded. "The question of probable cause is to be determined by the circumstances existing when the prosecution was instituted." Bigelow Lead. Cas. on Torts 198, *Vansickle v. Brown,* 68 Mo. 633. A party cannot thus make evidence for himself. If he was desirous of preventing a sacrifice of plaintiff's goods he could have refrained from hawking them at public auction.

V.   The instruction, in the nature of a demurrer to the evidence, was properly refused. Where there is any
6. ——: probable   evidence in the case from which the jury
cause.           might reasonably infer the existence of the act to be established, this court will not interfere. *Kelly v. Railroad Co.,* 70 Mo. 604. Probable cause is a

mixed question of law and fact. When the facts are admitted the court may declare their legal effect, but when they are disputed the question is for the determination of the jury under appropriate instructions. *Sharpe v. Johnston*, 59 Mo. 557.

VI. The second instruction given on behalf of plaintiff is as follows: "The jury are authorized to infer malice 7. INSTRUCTIONS. from the want of probable cause for suing out the attachment."

The language employed in this instruction is inapt. Malice does not result as matter of law, from the want of probable cause. The absence of such cause may be so palpable and the attendant circumstances of suing out the writ such, that the jury may infer the existence of the malice from the want of probable cause. But to tell the jury they are "authorized" to conclude there was malice from the want of probable cause, was calculated to mislead, and liable to abuse in argument. It is not improbable, as suggested by counsel, that had it been directly coupled in the jury's mind with succeeding instructions it might have been harmless. But it is not safe in a series of instructions to trust largely to the continuity in reasoning, and the logical analysis of "the panel of twelve." They are liable to be misled by the assertion of apparently distinct propositions in separate instructions, which might to the professional mind be cognate and harmonious. The relation of one instruction to another ought to be so near that their connection and meaning would be obvious. The safer course in this case would be to follow the character of instruction commented on in *Sharpe v. Johnston, supra,* 576.

The court also gave the following instruction for plaintiff: "If the jury believe from the evidence that Dan 8. AGENT'S UNCOM- Glasner was the agent of defendant in the MUNICATED KNOWL-EDGE. conduct and management of the store of defendant, for the sale of the merchandise therein contained, and collecting bills therefor, then A. H. Glasner is bound by the information obtained and acts done by said

agent relating to, and in the conduct of said business. And if the jury further believe from the evidence that at the time of the swearing out of the attachment herein complained of said Dan Glasner was in possession of information of the fact that plaintiff at that time was a resident of the State of Missouri, then defendant was affected by such information of his agent, and his liability is in no wise altered by the failure of said agent to impart said information to him."

If the proposition of law thus announced were otherwise correct the instruction is objectionable in that it seems to assume as a "fact that the plaintiff at that time was a resident of the State of Missouri." This was a fact in dispute, and as such should not be even colorably assumed in an instruction.

It is certainly carrying the law of agency to extreme length to hold in an action of tort that a principal is bound by the uncommunicated notice and knowledge had by a special agent. The responsibility attached to the principal for the agent's knowledge and information appears, from the cases cited and the texts on the subject, to adhere in matters arising *ex contractu*. A principal is not answerable for the torts of his agent, unless he has authorized them or reaped the benefit from them, (Whart. on Agency, § 540, and citations.) Suppose the agent was authorized to sell goods for the plaintiff and collect debts arising therefrom. This would not make the principal liable for the malicious prosecution by the agent of a claim for goods sold. His agency did not authorize the employment of unlawful means in such collections. The agent himself would be the only party liable to damages in such case, unless it could be shown that the principal authorized the act or ratified it in some way. Whart. on Agency, § 476, 477. Prof. Minor, in his treatise on Common and Statute Law, (I Minor's Institutes, p. 219) says: "The master is in general liable in an action *ex contractu*, but not in an action of tort." See *Udell v. Atherton*, 7 Hurlst. & N. 172.

The attachment might be instituted by the principal in the honest belief of the existence of the grounds alleged. The indications and information appearing and coming to him might be such as to induce the most wary and cautious business man to act on them. His agent, even after inquiry made of him by the principal, might be uncandid, false or deceitful in his communication. The principal, after diligent quest for the truth, might fully lay before his counsel the whole facts in his possession, which seemed highly inculpatory to him and counsel, and yet be liable, according to the enunciation of the instruction, because his agent in charge of his mercantile house possessed undisclosed information.

The action is against this defendant for his malicious trespass. Both want of probable cause and malice must concur to authorize a recovery. If the jury may infer the existence of the malice from the entire absence of probable cause for swearing out the attachment, and the agent knew, but not the master, that there was no cause for it, the doctrine of the instruction might produce the solecism of a verdict for damages against the latter although he was not actuated by malice at all.

A more satisfactory argument against the doctrine of this instruction is this: as both malice and the want of probable cause must exist to authorize a recovery, and the malice can only be that of the party sued, as it is an emotion of the person, it must result that no information of a mere agent, unknown to the principal, can form the basis of an action against him in such a case as this unless it further appears that the principal, by the exercise of that diligence which a prudent and careful person ordinarily exercises under like circumstances, might have obtained the information by timely inquiry of such agent.

VII. Appellant complains of the following instruction: "A residence is obtained by one removing from 9. DOMICIL. one State into another, the moment he arrives in the State to which he removes after having

formed an intention to so remove and reside or change his domicil."

Without reviewing the authorities on the requisites of an acquired domicil, as the case is to be retried, I think it proper to suggest in lieu of the instructions asked and refused on this branch of the case, the following, as applicable under the evidence : A mere residence of a temporary nature with no present purpose of an established abode is not sufficient to constitute a person a resident of this State. But if the jury should find from the evidence that the plaintiff had left Wyandotte, and brought his household goods to Kansas City, Mo., and there took lodging with the intent then formed of making his home in this State without a present intention of removing therefrom, this would constitute the plaintiff a resident of this State from the time he so moved into the State.

VIII.   Inasmuch as the case is to be remanded it may be as well to notice the instruction given on behalf of the defendant, in which the jury were told that if defendant brought his attachment suit on the advice of counsel, etc., and that said counsel was apprised of the facts relating to the claim against the plaintiff, and the suit was brought in good faith to recover what he believed he was entitled to, under the laws of the State, then defendant had probable cause, and the jury should find for him.   The instruction in this form should not have been given.   The vice of it consists in limiting the facts communicated to the advising counsel to those relating to the claim against the plaintiff.   The facts pertaining to the claim might well be construed to mean the manner of creating the debt, that it was honestly due and not paid.   The facts he should have communicated to his counsel were as to the grounds of the attachment, all that he knew about the conduct and movements of Scovill, which could justify an honest man in making affidavit for a summary writ that was to seize upon the household effects of his debtor and carry them away.

10. MALICIOUS ATTACHMENT: advice of counsel.

Again this instruction says: "And the suit was in good faith to recover what he believed he was entitled to under the law." The good faith is thus limited to the purpose to recover what be believed he was entitled to. No doubt a party may believe he is entitled to collect an honest debt, but the means employed may be reprehensible, wanton and malicious. His belief, in an action like this, should pertain to the existence of the facts on which his affidavit was based. A party may not, with impunity, resort to the extraordinary remedy by attachment merely because he believes his claim is honest and ought to be paid.

The judgment of the court is reversed and the cause remanded for re-trial in conformity with this opinion. Ewing, C., concurs, Martin, C., absent.