## HURT v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

1. **Practice:** EVIDENCE: OPINION OF NON-EXPERT WITNESS. A witness not testifying as an expert, but merely testifying as to matters with which the jury may well be supposed to be as conversant as himself, and as capable of drawing a correct conclusion, should not be allowed to give an opinion.

2. **Railroads:** CARRIER OF PASSENGERS: DUTY OF CONDUCTOR. The law imposes upon the conductor of a railroad train acting as the agent of the corporation, engaged in the carriage of passengers, the obligation of carrying the passenger safely to his point of destination, announcing the arrival of the train at the station, and giving reasonable opportunity to the passengers to leave the cars. When this is done, the duty of the conductor ceases.

3. ———: ———: ———: PRESUMPTION. When the servants of a corporation, engaged in the business of a common carrier, afford passengers a reasonable time to leave the cars after arrival at the end of their journey, they have the right, after the expiration of such reasonable period, to presume that all the passengers whose place of destination is then reached, have left the cars as is customary for passengers in like circumstances.

4. ———: ———: ———: ———. When such a reasonable time has thus elapsed it is no part of the duty of the servants of such corporation to make personal inspection of or to interrogate the remaining passengers to see whether they intend leaving the cars. The law imposes no such onerous duty upon a carrier of passengers, and if it should appear in evidence, in any given case, that passengers similarly situated as to age, sex, and so forth, as the party complaining, have safely left the cars prior to any injury or accident complained of, this would afford ground for legitimate inference by the jury that sufficient time had been granted to the passenger, who sues for the negligent injury, to have alighted in safety.

5. ———: ———: ———: FAMILY AS PASSENGERS. When a man becomes a passenger on a railroad car with his wife and little children, he is their guardian and protector, and has the supervision of their safety; and they, so far as the act of debarkation is concerned, are to be regarded, to all intents and purposes, as a unit, and the same rule which accords to the family group a reasonable time to debark, must, of necessity, include within it the right to take their baggage with them when leaving the car.

6. ———— : NEGLIGENCE. The doctrine of comparative negligence has never been recognized in this state.

7. ———— : ————. When the concurring negligence of the plaintiff proximately contributes to the injury complained of, there can be no recovery, unless such injury is also the direct result of the omission of the defendant, after becoming aware of the danger to which the plaintiff was exposed, to use the proper degree of care to avoid injuring him.

8. ———— : DAMAGES : INJURY TO MINOR. In an action for damages for an injury to plaintiff's five-year old son, resulting in the loss of a leg and the toes of the other foot, where the testimony is to the effect that the boy's services would be worth one hundred dollars per year from his tenth or twelfth year until he attained his majority, a verdict of forty-five hundred dollars is excessive.

9. ———— : ———— : ————. There being no circumstances of aggravation, the law will confine the recovery to compensatory damages. and will not allow those which are punitive in their nature.

*Appeal from Madison Circuit Court.*—HON. JAMES D. Fox, Judge.

REVERSED AND REMANDED.

*Bennett Pike, Wm. Carter* and *Henry G. Herbel* for appellant.

(1) The court erred in admitting illegal and incompetent evidence offered by plaintiff. *Belch v. Railroad*, 18. Mo. App. 8; *Birney v. Railroad*, 20 Mo. App. 470; *Railroad v. Beebe*, 14 Neb. 472; *City of Parsons v. Lindsay*, 26 Kan. 430; *Railroad v. Ball*, 5 Ohio St. 571; *Farrand v. Railroad*, 21 Wis. 441. (2) The court committed error in rejecting legal and competent evidence offered by defendant. *Allard v. Lamerande*, 29 Wis. 502; *Barker v. Barker*, 14 Wis. 142; 2 Pom. Eq. Jur., sec. 936, also note 3 to sec. 940, and note 1 to sec. 942; *Webb v. Armstrong*, 6 Humph. 379; *Morrison v. Deaderick*, 10 Humph. 342; *Hunt v. Lyle*, 8 Yerg. 142. (3) The court erred in giving the instructions asked by plaintiff:.

*Strauss v. Railroad*, 75 Mo. 185 ; *Sevier v. Railroad*, 18 Am. & Eng. Ry. Cases, 245 ; s. c., 61 Miss. ; *Zimmermann v. Railroad*, 71 Mo. 484 ; *Yarnell v. Railroad*, 75 Mo. 583 ; *Goodwin v. Railroad*, 75 Mo. 75. (4) The instructions given for plaintiff and defendant were contradictory. *Stephenson v. Hancock*, 72 Mo. 614 ; *Price v. Railroad*, 77 Mo. 508. (5) The court committed error in permitting the counsel of plaintiff to make statements to the jury not warranted by the law or the evidence, and that were calculated to mislead the jury. *State v. Lee*, 66 Mo. 166 ; *Brown v. Swineford*, 44 Wis. 282 ; *Tucker v. Henwicker*, 41 N. H. 322. (6) The verdict was excessive and evidently the result of prejudice and passion. *Dunn v. Railroad*, 21 Mo. App. 205 ; *Railroad v. Barker*, 33 Ark. 350 ; *Railroad v. Brown, Adm'r*, 26 Kan. 443 ; *Rose v. Railroad*, 39 Iowa, 246 ; *Nagle v. Railroad*, 75 Mo. 653 ; *Leiterman v. Railroad*, 22 Mo. App. 351.

*Edwards, Whybark, Emerson, Cahoon & Cahoon* for respondent.

(1) Carriers of passengers for hire are bound to observe the utmost care and caution, and they are responsible to their passengers for such injuries, received by them in the course of their transportation, as might have been avoided or guarded against by the exercise of extraordinary vigilance, aided by the highest skill. Story on Bailments, sec. 601 ; 2 Red. on Railways [5 Ed.] 216 ; *Railroad v. Roy*, 102 U. S. 451 ; *Jamison v. Railroad*, 55 Cal. 593 ; *Fairchild v. Stage Co.*, 13 Cal. 599 ; *Lemon v. Chanslor*, 68 Mo. 340 ; *Taylor v. Railroad*, 48 N. H. 30, 304 ; *McPadden v. Railroad*, 44 N. Y. 478 ; *Packet Co. v. True*, 88 Ill. 608 ; *Railroad v. George*, 19 Ill. 510 ; *Frink v. Potter*, 17 Ill. 406 ; Thomp. Car. Pass. 200 ; *Warren v. Railroad*, 8 Allen, 233 ; *Eaton v. Railroad*,

11 Allen, 505; *Simmons v. New Bedford, V. & N. S. Co.*. 97 Mass. 368. (2) Carriers are bound to manage their vehicles in such a manner as to secure the safety of their passengers. And, therefore, a railway company is liable for negligence in suddenly starting a train after it has once stopped, without allowing a reasonable time for passengers to get off or on. *Curtis v. Railroad*, 27 Wis. 158; *Doss v. Railroad*, 59 Mo. 27; *Keating v. Railroad*, 49 N. Y. 673; *Mitchell v. Railroad*, 30 Ga. 22; *Railroad v. Hendricks*, 26 Ind. 228; *Gillis v. Railroad*, 59 Pa. St. 143; *Rose v. Railroad*, L. R. 2 Exch. Div. 248; *Robson v. Railroad*, L. R. 2 Q. B. Div. 248; *Railroad v. Kendrick*, 40 Miss. 374; *Lemon v. Chanslor*, 68 Mo. 354; *Straus v. Railroad*, 86 Mo. 428. (3) The responsibility of a railroad company for the safety of its passengers does not depend on the kind of cars in which they are carried, or on the fact of the payment of fare by the passenger. *Lemon v. Chanslor*, 68 Mo. 357; *Shiells v. Blackburne*, 1 H. Bl. R. 115, 158; 2 Mees. & W. 143; *Railroad v. Derby*, 16 How. 468; *Railroad v. Lockwood*, 17 Wall. 357, 378, 384; *Railroad v. Mahling*, 30 Ill. 9; *Steamer v. King*, 16 16 How. [U. S.] 469; *Jacobus v. Railroad*, 20 Minn. 125; *Watson v. Railroad*, 24 Upper Canada [Q. B.] 98; *Carroll v. Railroad*, 1 Duer, 571. (4) Where a railroad company admits passengers into a caboose car, attached to a freight train, to be transported as passengers, it incurs the same liability for the safety of the passengers as though they were in the regular passenger coaches at the time of the incurring of the injury. *Edgerton v. Railroad*, 39 N. Y. [12 Tiffany] 227; *Carroll v. Railroad*, 1 Duer, 578; *Railroad v. Mahling*, 30 Ill. 9; *Tuller v. Talbott*, 23 Ill. 357; *Railroad v. Thompson*, 56 Ill. 138; *Railroad v. Derby*, 14 How. 486; *Steamer v. King*, 16 How. 469; *Lemon v. Chanslor*, 68 Mo. 354. (5) Plaintiff's answer as to how much he thought he was damaged was not error. *Straus v.*

*Railroad*, 86 Mo. 432; *Winkler v. Railroad*, 21 Mo. App. 109; *Tate v. Railroad*, 64 Mo. 153; 9 Mo. 10; *Brown v. Emerson*, 18 Mo. 103; *Owen v. O'Reiley*, 20 Mo. 603. (6) The second instruction for the plaintiff correctly declared the law. *Kelley v. Railroad*, 70 Mo. 609; *Waller v. Railroad*, 83 Mo. 615; *Frick v. Railroad*, 75 Mo. 544; *Higgins v. Railroad*, 36 Mo. 418; *Brown v. Railroad*, 66 Mo. 588. The respondent's eighth instruction was proper. *Lemon v. Chanslor*, 68 Mo. 354, and authorities cited. (7) The verdict is not excessive. *Frick v. Railroad*, 75 Mo. 54.

SHERWOOD, J.—Action by plaintiff for injuries received by his minor son, a boy, about five years old, who was shaken from the front platform of a caboose and run over by a car of the defendant, in consequence of the caboose being struck by the train, from which it was detached, backing suddenly. The result of the accident was that one of the boy's legs had to be amputated just below the knee, as well as the toes of the other foot. The plaintiff, his wife, and four children, aged respectively, one, five, seven, and ten years, took passage in the caboose of the defendant from Knob Lick to Fredericktown, their point of destination. When that point was reached, the conductor announced the station, the cars stopped, and other passengers got out, and while the plaintiff was on the front platform and in the act of getting off with his wife and children, the collision occurred, with the consequences above stated. It seems that this collision or jar of the cars took place, as the result of the trainmen making what is called a "running switch," and this was made after a signal had been given to "back up."

As is usual in such cases, there was great conflict in the testimony—that of the plaintiff showing, that not sufficient time was given after the train stopped to permit himself and family to alight, and that the employes

were guilty of carelessness in backing the train ; that of the defendant showing the exercise of care and the giving of ample time for alighting—the different witnesses on either side fixing at from one-half minute to some four or five minutes, that the caboose remained at a standstill. The result of the trial was a verdict for the plaintiff for forty-five hundred dollars. As the evidence was conflicting, the only points for discussion will be in reference to the admissibility of the testimony, the instructions, and the amount of the verdict.

Of these in their order : While the plaintiff was testifying, his counsel drew his attention to the amount of his damage in the following way : " Now, then, having stated his incapacity for work, tell the jury as near as you can what, considering, first, the loss of his work until the twenty-first year of his age, and the trouble and expense you have been at in caring for the child, and in the caring for him in the future, the amount you are damaged by reason of the injuries. State if you can how much you think you are damaged." Objection was made by the defendant's counsel to the witness making such statement as requested, upon the ground that such estimate of the witness would be merely speculative and not the proper measure of damages ; but the objection was overruled and the witness answered : " Well, from the loss of the child's work, and what I have lost myself, I claim damages, five thousand dollars."

I. The objection was well taken, and should have prevailed. A witness not testifying as an expert, testifying merely as to matters with which the jury may well be supposed to be as conversant as himself, and as capable of drawing a correct conclusion, is not allowed to give an opinion. 1 Phil. Evid., (Cow. & H. Notes) 781 ; Ramadge v. Ryan, 9 Bing. 335. The books are full of illustrations of this doctrine. Blair v. Railroad, 20 Wis. 262, is a case directly in point. A member of a

mercantile firm had been injured by the negligence of a railroad company, the injury causing his enforced absence from the firm. It was ruled that his partner, testifying as a witness, could not be allowed to state his opinion as to the amount of damage the firm had sustained by reason of that absence. To the same point is *Lincoln v. Railroad*, 23 Wend. 425. Whenever the testimony sought to be elicited amounts to but matters of opinion as to the future, not of a present fact, it is inadmissible. *Burt v. Wigglesworth*, 117 Mass. 302.

Here, the testimony drawn out of the witness as to the amount of his damage, was merely speculative in its character, and the response that he made to his counsel was but a substitution of the judgment of the witness for the judgment of the jury, and virtually put him in their place. If the opinion sought is based on no evidence, it should be rejected, and if properly founded on evidence, that evidence ought to be laid before the jury, the law presuming that they are equally as capable to draw therefrom the correct inferences. Best Evid. (Chamberlayne) 497. A result similar to the one here announced, as to an opinion of a non-expert witness respecting damages, has been reached in *Belch v. Railroad*, 18 Mo. App. 80.

II. Now as to the instructions: The second one for the plaintiff was in this language:

" 2. The court instructs the jury that defendant as a railroad company is responsible to passengers for the careless or negligent acts of its agents and servants employed by it in running or managing its trains, when such wrongful, careless, or negligent acts result in injury to such passengers, and are committed in connection with the business intrusted to them and springing from or growing immediately out of such business; and that defendant as such railroad company is bound to exercise the strictest vigilance in carrying passengers to their destinations and in *setting them down safely*

*thereat*, and are responsible for want of care and fore-sight in doing it, and are amenable to the direct and immediate consequences of errors committed by it in so doing. If, therefore, the jury believe, from the evidence in the cause, that the caboose in which defendant trans-ported plaintiff and his family, at the time referred to by the witnesses in this cause, was not allowed to remain standing still such reasonable and sufficient length of time as to enable plaintiff, by the exercise of reasonable diligence, to *safely remove himself, his wife, and minor children, with such baggage as they had with them*, from said car, but while plaintiff was using reasonable diligence to so remove his said family and baggage from said caboose, it was by defendant suddenly and violently, and without notice to the plaintiff, struck by the other parts of the train to which it belonged, and by reason of the shock so produced, John Henry Hurt, the minor son of plaintiff, was precipitated from the platform of said caboose under said train and injured as described in the petition, then said facts constitute negligence on the part of the defendant, and the jury should find the issues in this cause for the plaintiff and assess his damages at a sum not to exceed five thousand dollars."

This instruction was erroneous in the particular that it asserts that "such railroad company is bound to exercise the strictest vigilance in carrying passengers to their destination *and in setting them down safely thereat*." This in its latter portion states the law too strongly in favor of the plaintiff. All the duty the law imposes upon a conductor, acting as the agent of a cor-poration, in order to comply with the obligation of the carrier to a passenger, is to carry him safely to his point of destination, announce the arrival of the train at the station, and give him a reasonable opportunity to leave the cars. When this is done, the duty of the conductor ceases. *Sevier v. Railroad*, 18 A. & E. R. R. Cas. 245 ;

*Straus v. Railroad*, 75 Mo. 185. And when the servants of a corporation, engaged in the business of a common carrier, afford passengers a reasonable time to leave the cars after arrival at the end of their journey, they have the right, at the expiration of such reasonable period, to presume that all the passengers, whose place of destination is then reached, have done what is customary for passengers in like circumstances to do, to-wit, have left the cars.

When such a reasonable time has thus elapsed, it is no part of the duty of the servants of such corporation to make personal inspection of, or to interrogate, the remaining passengers, to see whether they intend leaving the cars. The law imposes no such onerous duty upon a carrier of passengers. And if it should appear in evidence, in any given case, that passengers similarly situated as to age, sex, etc., have safely left the cars, prior to any injury or accident complained of, this would afford ground for legitimate inference by the jury that sufficient time had been granted to the passenger who sues for a negligent injury, to have alighted in safety.

It is true that in *Kelly v. Railroad*, 70 Mo. 604 (*loc. cit.* 609), when speaking of the duties of a common carrier toward passengers, it is said, "that persons to whom the management of a railroad is intrusted, are bound to exercise the strictest vigilance, in carrying passengers to their respective destinations and in *setting them down safely;*" but an examination of that case, as a whole, will clearly show that the words I have italicised were not intended to be taken in a literal sense; for there the cars *did not stop at all*, but only, in railroad parlance, "slowed up," and Kelly, in attempting to alight, was killed. General expressions in an opinion are always limited and controlled by the particular facts of the given case; and it is a very unsafe method for a practitioner to select such general

words and incorporate them into an instruction as a guide to a jury, and as announcing a practical principle of law. The error now being commented on was committed in a more palpable form in the eighth instruction for plaintiff, which told the jury that the defendant, in "so carrying such minor son of plaintiff thereon, is to be held to the same degree of diligence in carrying to, and *safely landing* plaintiff's said minor child at, his destination, as though," etc. Taking these two instructions the jury may well have thought it the duty of the company to have taken the child *bodily* and placed it safely on the ground. Such instructions as these would make common carriers the guardians of their passengers.

Considerable criticism has been indulged in by counsel for defendant relative to that portion of the second instruction which says that the train should have been allowed "to remain standing still such reasonable and sufficient length of time as to enable plaintiff, by the exercise of reasonable diligence, to *safely remove himself, his wife, and minor children, with such baggage as they had with them*, from said car." This objection is not well taken; nor is this criticism well founded. When a man becomes a passenger on a railroad car with his wife and little ones, he is their guardian and protector; he has the supervision of their safety; and the family group, so far as the act of debarkation from the cars is concerned, is to be regarded, to all intents and purposes, as a *unit*, an *indivisible integer;* and the same rule which accords to that family group a reasonable time in which to debark, must of necessity include within it the right to take their personal belongings or baggage along with them when in the act of leaving the car.

The principle recognized in the plaintiff's fourth instruction is not the correct one. The doctrine of "comparative negligence" has never been recognized in

this state. In *Straus v. Railroad, supra*, which was a passenger case, the true rule as to contributory negligence in such cases, was thus announced: "That when the concurring negligence of the plaintiff proximately contributes to produce the injury complained of, there can be no recovery unless such injury is also the direct result of the omission of the defendant, after becoming aware of the danger to which the plaintiff was exposed, to use a proper degree of care to avoid injuring him."

III.  Relative to the damages recovered. It is claimed by the defendant's counsel that they are excessive. The testimony is to the effect that the boy's services would be worth one hundred dollars per year from his tenth to his twelfth year until he attained his majority. This, at the most, would be eleven hundred dollars; but doubling that sum it would amount to but twenty-two hundred dollars, or less than half the recovery. This is not a vindictive action; there were no circumstances of aggravation in the case, and, therefore, the law will confine the recovery to compensatory damages, and will not allow those which are punitive in their nature. In *Atchison, Topeka & Santa Fe Railway v. Browne*, 26 Kas. 458, Brewer, J., said: "We cannot agree that the theory of the law is to punish for the mere negligent destruction of life; and the law of compensation means that no more should be given to the next of kin than they would probably receive from the decedent if his life had not been taken away. * * * The statute does not contemplate a speculation on the probable earnings of the deceased; it simply aims to make good to the survivors that which they have probably lost by his death."

Another case, that of *L. R. & Ft. S. Ry. Co. v. Barker*, 33 Ark. 369, is quite in point. It was an action for killing a boy five years old, and the jury assessed the damages at forty-five hundred dollars. The judgment was reversed, on the ground of excessive damages,

and in commenting on the amount of the verdict, English, C. J., said : "We are satisfied that if the facts of the case were submitted to one hundred impartial men, of sound discriminating judgment, of experience and observation in the raising of children, properly instructed in the law as to the measure of damages, ninety-nine, if not all, of them would say that the damages awarded in this case for the loss of probable service were excessive, and such is our judgment." The case just cited is an instructive one, giving many instances in which courts of different states have passed upon questions of excessive damages having been awarded. See also the case recently decided by this court : *Parsons v. Railroad*, 6 S. W. Rep. 464; s. c., *post*, p. 286.

For the errors aforesaid, the judgment is reversed and the cause remanded. All concur.